Council motion to appeal the bail appeal in U.S. v. Whitehead. That's number 241769. Thanks. Good morning, your honors. May it please the court. My name is Donna Aldea and I represent Bishop Lamore Whitehead. Your honors, bail pending appeal should have been granted in this case and should be granted by this court. As a threshold matter, detention is not mandatory in this case as a result of the residual clause for crime of violence. To kind of jump right in because of the limited time here, there's no question in this case that courts must apply the categorical approach in this instance under the residual clause based on this court's decision in Watkins. Additionally, this issue is governed by two cases that we cited too extensively in our papers, which notably the government does not address. And those would be this court's decision in United States v. Kaladi and the Supreme Court decision in Taylor. In Taylor, the Supreme Court said quite clearly that whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or threatened to use force against another person or his property, thus applying a categorical approach to hold that an attempted Hobbs Act robbery does not constitute a crime of violence. Then extending it to the issue that we have here, in Kaladi, this court very clearly stated even if the completed offense necessarily involves the use of threat of force, the offense of attempt to commit the crime can be accomplished by taking steps that do not include the use or threat of force so long as they come sufficiently close to completion of the crime. In other words, in Kaladi- How much does this all really matter? Because if the presumption does not apply, wouldn't the categorical approach also not apply in deciding whether there was evidence of violence that would lead to a discretionary decision to deny bail? Isn't what we're really talking about here is does this person belong in jail pending appeal? Well, so first, I guess what's interesting about this case is that unlike in Watkins where the court was dealing with a situation where there was the crime of violence finding did not mandate detention, in the bail pending appeal context, which is different than the pretrial context in Watkins, if that were found, detention would be mandatory. And that's why we also argue that in this context, unlike in Watkins, it would be unconstitutionally vague in this case as applied to apply the residual clause, because there is no discretion that the lower court has. But to address Your Honor's question more directly, this is a threshold. If you're right, then the lower court has discretion. If you're wrong, then we don't have to reach it. But if you are right, and we could assume that you're right, and proceed to consider what a discretionary decision would look like.  Now, what did the district court, I'm sorry that I should be up on this detail, did the district court say the only reason that I'm doing this is because it's mandatory, or did the district court make any findings of its own? No, the district court initially found that this was a crime of violence, but in denying bail pending appeal, the court actually looked at the other factors. So yes, Your Honor, I understand Your Honor's question. So, assuming that I'm right on the first point, and detention is not mandatory, in this case, Mr. Whitehead's appeal clearly presents substantial issues for appeal. First, with respect to Your Honor's question about dangerousness, there is no question in this case that Mr. Whitehead is not likely to flee or pose danger to the community. And in fact, the district court itself concluded this explicitly on the record in Exhibit F to our motion at page 1365. So this is not a question where the facts were violent, where the district court thought there was a danger to the community, or thought that there was a likelihood of flight. To the contrary, that finding was explicitly resolved in Mr. Whitehead's favor. With respect to the issues, we've actually identified many, but I'd like to focus on two here, which I think are very strong issues for appeal that really will, actually, I don't need to prove this, but will likely result in reversal of this conviction. The first is, in this case, Mr. Whitehead was precluded from confronting the government's key informant, whose recordings extensively were relied on by the government in this case to prove two of the counts in this case relating to, counts two and three, relating to the attempted... But the government didn't call him as a witness. The government did not. So how does he become a key witness who needs to be confronted? Well, he is a key informant, and his recordings were significant. I mean, you could call him for whatever he might have to say that would support the defense, but I understood the ruling, the evidentiary ruling, to be the tapes come in for what Mr. Whitehead... Yes, Whitehead says on the tapes, and what the informant says is only for the context so you can understand what Mr. Whitehead's statements are. So I'm not sure how his credibility is an issue, and I'm not sure how he's a government witness. So the problem here is that the defense did seek to call him on precisely the issues that would be relevant, and he invoked his Fifth Amendment privilege as to each of the questions that were posed. And on that point... He did that outside the presence of the jury. Outside the presence of the jury, correct. And on that point, I would direct the court to United States v. Zappola, which is on all fours with this case, where this court reversed a conviction expressly for the same issues at issue here. This was, Zappola involved a government informant who was not called to testify, who the defense sought to call to testify at trial, and who invoked his Fifth Amendment privilege as to each question. Like in Zappola... So you're saying that you have a right to have him basically take the Fifth in front of the jury because you can draw inferences from that even though the government could not. No, Your Honor. No. Not at all. Then what is it that's going to happen? He says he's going to take the Fifth. So either there's nothing because he takes the Fifth, or you have a right to have him to call then take the Fifth. The court, in order for him to take the Fifth, according to this court in Zappola, the court has to look at each of the questions independently to actually assess whether they would in fact produce an incriminating response. In this case, none of the questions that were asked would have produced an incriminating response here. You're basically saying he's lying and he set this guy up, so he's sort of going to be in a perjury trap. Isn't that enough to make this incriminating? No, Your Honor. The reason for this is because everything that he was asked about concerning how he met Whitehead, his relationship with Whitehead, what he did for the FBI in this case, these are questions identical to the ones that were posed in Zappola, for which the informant also took the Fifth, which this court said was error. And the reason for that is that those questions, the conduct of the informant when he's working with the FBI, cannot subject that informant to criminal prosecution. So there is no risk of self-incrimination from the questions. Moreover, the questions themselves have to be ones that are likely to elicit some incriminating response that could result in prosecution. And here, as was aptly argued by the defense counsel in this case before asking the questions and then subsequently in the motion, in the post-conviction motion that was filed, the Rule 33 motion, in this case there was no risk that any of these questions would elicit an incriminating response unless the witness would have admitted in response to those questions that he either lied to the FBI about the conduct here, altered the recordings that he provided to the FBI, or did something improper like that. And if that were the case, then those answers would be so probative in this case that the value to them, the Sixth Amendment value, would far outweigh the Fifth Amendment right of the witness. Well, I don't think you need to go there, but fine, thank you. So Zappola is on all fours with this case. I would urge the court to look at that case. It's 646 F. 2nd 48, and it's a decision by this court that involves an identical situation, not just on this issue, which was the key issue, that he improperly was permitted to invoke the Fifth Amendment privilege as to each question without the court engaging in any kind of inquiry or anything beyond just accepting that as a blanket proposition without looking as to whether the answer could actually incriminate him. Can I, I think we have you on this point. Yes. I'm mindful of the time. I just want to make sure I'm understanding. In order to succeed in this, in your motion, even if we are persuaded by your argument, you may create substantial questions as to Counts 2 and 3, but am I right that we would have to also conclude, and I know you've briefed them, you don't need to argue each of them, that we'd have to conclude that Counts 1, 4, and 5, you've also raised substantial questions? So you would need to find that the error is such that it would require a new trial. And the error that I would point to in this case that actually would do that overarchingly without getting into each of the specific ones is the only other issue that I wanted to highlight for this court, the improper admission of the prior bad acts to show identity. That did not just relate to Count 5. That was a problem where this court admitted extensive evidence that Mr. Whitehead had in the past, unrelated to this, engaged in fraud in submitting fraudulent loan applications to five other banks on five other occasions over a course of time. And the reason that that doesn't just relate to Count 5 is because this was a case where credibility was the crux. Mr. Whitehead testified at this trial. The whole basis of the defense was that his version of facts was more credible than the version of facts that was espoused by the witnesses here. So that relates to all of the counts, and I think that that case is governed by United States v. McCallum, a decision by this court. It's miscited in my brief. The page is wrong, so I just want to clarify it. It's 584 F3 471, and that case warns of propensity in sheep's clothing that will infect the entire trial. Where this trial was founded on credibility, the admission of those documents was unnecessary to prove his intent or his identity on Count 5, and was clearly propensity in sheep's clothing that infected everything. That's why a new trial is required. Appreciate it. Thank you. Thank you for your arguments. Mr. Winster. May it please the court. My name is Derek Wickstrom. I represent the United States in this appeal, as I did in the district court. I'm going to pick up on the issue that we just ended with, the 404 B issue, because Ms. Aldea concedes that that's the only issue that cuts across, arguably cuts across all of the counts here. And as Judge Robinson pointed out, in the absence of a substantial question that goes to the convictions, at least with respect to counts 1, 2, 3, and 5, for which concurrent nine-year sentences were imposed, there's no basis for this court to release Mr. Whitehead pending appeal. With respect to the 404 B issue, at trial, Mr. Whitehead's identity was the contested issue with respect to Count 5. Count 5 charged Mr. Whitehead with a loan fraud in which someone using a computer submitted an electronic loan application in Mr. Whitehead's name. Now, Ms. Aldea says that proving up that it was Mr. Whitehead that submitted the application was essentially a foregone conclusion or not a big deal at trial, but that is not correct. It's just not the case. The only issue that was contested was whether Mr. Whitehead himself had submitted those applications. And in fact, Mr. Whitehead did testify and vigorously denied having submitted the applications. He testified that it was somebody else, an accountant, who had since died. And so putting Mr. Whitehead behind the keyboard was the issue on Count 5. And the evidence that Judge Schofield admitted under 404 B was central to the government's proof of identity. It was not an abuse of discretion for Judge Schofield to permit that evidence to come in, and there is no basis to find that there's a substantial question as to abuse of discretion. I want to address... Can you highlight what that evidence exactly was and why it proved identity? Certainly. So, I would say the most central piece of evidence was that... So the underlying fraud, the Count 5 fraud, was carried out by submitting doctored Wells Fargo bank statements that claimed that Mr. Whitehead's entities had substantial assets and income when in fact they had none. He used the same doctored bank statements to submit a series of other loan applications, some of which were found on his own electronic devices that were seized from his bedroom, one of which was in his mortgage application, and that was particularly important because he applied for a mortgage on the home he actually lived in at the time of trial. Using the same doctored bank statements, they were contained in an application that he signed in front of a notary at the closing for the house. And so that was central proof of the fact that he was the person who submitted the doctored bank statements online in Count 5. I want to address also the Brendan Belmonte invocation point. Even if the court were to find that this presented a substantial question for the reason Judge Robinson alluded to, it would not justify bail pending appeal. But for the record, Zappola is not on all fours with this case. Zappola in fact turned significantly on the fact that the invocation was avowedly improper. The former cooperator there invoked expressly on the basis of fear for safety, and this court recognized that that is not a valid basis for an invocation. That's at pages 53 and 54 of Zappola. I'm out of time. So unless the court, or I'm almost out of time, unless the court has any additional questions, I'm content to resume my submission. Are you relying on the presumption? I mean, it sounds, your argument here, I realize I'm not waiving anything, but I guess if it is a crime of violence, you win. Is that an argument that you're on the bail point? Are you making that argument? We have made that argument in our papers. I think that would be a sufficient alternative basis to detain Mr. Whitehead. The court doesn't need to reach it because there are no substantial questions here. But yes, the government's position is that detention is mandatory here because the residual clause in the Bail Reform Act is not void for vagueness. This court held that in Watkins. And because the cases that predate the Johnson, DeMaia, and Davis trilogy are not dead letters, as the reply brief argued. I understand that those cases no longer stand for the proposition that the residual clauses in ACCA or 924C admit a bunch of violent crimes that would not qualify under the elements clause. But those cases are still informative of the question whether the residual clause sweeps in a whole bunch of crimes of violence for purposes of the Bail Reform Act. And we submit that it does. But you don't, one of the things I've been trying to figure out about Watkins, there's sort of this argument that we've heard about the mismatch between the rationale and the application in this case where the consequence is detention. I completely lost my train of thought. Does that ever happen to you? It does happen to me, Your Honor. Were you going to ask whether Watkins' holding applies here in the context where detention is mandatory? No, thank you for giving me a second to put it together. The court found that the categorical approach applied. And I've been struggling a little bit with how to apply a categorical approach to a residual clause, because sort of the way a residual clause is structured, it's not like an elements clause. But it does seem that if, unless you're going to say that Watkins didn't apply a categorical approach to the residual clause, if you're applying a categorical approach, you sort of run into the inchoate, you know, attempt issue. And I'm just wondering how you get over that. Certainly, Your Honor, I actually don't think we run into it. And it's because there's an idiosyncratic way that you do the categorical approach in the context of residual clauses. And so in Taylor and Kalotti, which the defense cites, those are elements clause cases. And the court looks at the minimum conduct that would satisfy the elements when analyzing the categorical approach in that context. Unlike in the residual clause context, there, as Johnson and Davis and DeMaia make clear, the analysis is not whether the bare minimum conduct would create a substantial risk. The analysis of whether an ordinary or typical case would create a substantial risk. And that's the reason why there's a case from 2007 in the Supreme Court called James against the United States. It's not in our briefs, but it's discussed extensively in that trilogy of cases. There, the Supreme Court held that attempted Florida burglary was a residual clause crime of violence under ACCA. And the reasoning was that it is similar to burglary in the sense that every burglary begins with an attempt. And burglary creates a risk of a face-to-face confrontation, which therefore carries a substantial risk of violence in the ordinary case. We don't do that kind of analysis anymore, and we haven't for years. But that's the analysis. The analysis is just whether some hypothetical typical case would create a substantial risk of violence. And look, the residual clause is capacious. That's one of the reasons why it has been invalidated in statutes that define crimes or set punishments. But this is neither of those. Thank you. Appreciate your arguments both sides. We'll take it under advisement, try to get something out promptly.